FREEDLINE ET AL., APPELLANTS, *v.* CIELENSKY ET AL., APPELLEES.

(No. 5131—Decided December 13, 1961.)

*Messrs. Buckingham, Doolittle & Burroughs,* for appellants.
*Messrs. Bixler & Van Berg,* for appellees.

HUNSICKER, J. The Common Pleas Court of Summit County entered the following judgment:

"This cause came on to be heard upon the petition of the plaintiffs, the amended answer and cross-demand of the defendants, the reply of plaintiffs to such amended answer of defendants, and the answer of plaintiffs to the cross-demand of defendants, and the evidence adduced thereunder.

"Upon a consideration thereof it is the finding of this court that plaintiffs should be granted judgment against defendants in the amount of $2,240, together with interest at 6 per cent from July 30, 1959; it is further the finding of this court that defendants should be granted judgment against plaintiffs in an identical amount; and that plaintiffs and defendants divide the court costs equally.

"It is accordingly ordered, adjudged and decreed as follows:

"1. That judgment be and hereby is entered in favor of plaintiffs against defendants in the amount of $2,240, together with interest at 6 per cent from July 30, 1959.

"2. That judgment should be and hereby is entered in

favor of defendants against plaintiffs in an amount equal to that immediately above.

"3. That said judgments constitute a complete setoff, each against the other, and it is therefore and is hereby ordered that same be considered satisfied and discharged.

"4. That the court costs be shared equally by the parties. "Exceptions to both plaintiffs and defendants."

From such judgment Philomena Freedline, as an individual, and in her capacity as executrix of the estate of Anthony Freedline, appeals to this court on questions of law, saying:

"The lower court erred, to the prejudice of appellants, in the following respects:

"1. In failing to grant the motion of plaintiffs for a directed verdict at the close of the testimony.

"2. In awarding judgment to defendants on their cross-demand and cross-petition.

"3. In admitting incompetent evidence which should have been excluded because of the Dead Man's Statute.

"4. The judgment in favor of defendants against plaintiffs on the cross-demand and cross-petition of defendants was not sustained by the evidence.

"5. The judgment awarded to defendants on their cross-demand and cross-petition was against the manifest weight of the evidence.

"6. The lower court committed other errors prejudicial to the rights of plaintiffs, apparent upon the face of the record herein."

The evidence introduced in the trial court, sitting without a jury, was that:

Mrs. Freedline and Mr. Cielensky are first cousins, once removed; Mr. Freedline, the deceased husband of the appellant Mrs. Freedline, and Mr. Cielensky, became very good friends; the Freedlines lived in a basement house; Mr. Freedline wished to construct above the basement a home for himself and Mrs. Freedline; Mr. Cielensky and many of the neighbors assisted Mr. Freedline in the work of building and completing the home; all of such work done by Mr. Cielensky was performed without an intention to charge for his services; when the house was finished, Mr. and Mrs. Freedline moved from the basement to the ground floor home; Mr. and Mrs. Freedline

then told Mr. Cielensky and his sister that they could live in the basement apartment of the Freedline home "for as long as [they] wished, and if at the time [they] decided to move, [they] could rent it [themselves] as [their] own"; the sister did not move into the basement apartment. Mr. Cielensky, however, after remodeling the basement apartment at his own expense, became married and moved into the basement apartment with his wife, Emma, an appellee herein; Mr. and Mrs. Cielensky lived in the basement apartment rent free from March 7, 1953, until October 1958; they moved from that place in January 1959. Mr. Cielensky spent approximately $4,600 in remodeling the basement apartment.

In 1956, Mr. and Mrs. Cielensky purchased two lots across the street from the Freedlines. Thirty-five hundred dollars of the purchase price of these lots were given to the Cielenskys by Mr. and Mrs. Freedline, who mortgaged their home to get this money. Mr. Cielensky claimed that this sum was a gift to him by Mr. and Mrs. Freedline. There is no credible evidence to support such a contention. This money was being repaid by monthly installments to the creditor bank; and until July 1959, all such payments were made by Mr. and Mrs. Cielensky. It is to recover the balance due on this loan that the within action was commenced. That it is a loan from the Freedlines to the Cielenskys, there can be no doubt, and the appellants are surely entitled to a judgment for the amount due on such loan as claimed by Mrs. Freedline.

The cross-demand of Mr. Cielensky, arising out of his claim that he was entitled to free rent for as long as he cared to live in the basement apartment of the Freedline home, presents a question that requires discussion. The claim of the Cielenskys was, in effect, that Mr. and Mrs. Cielensky had a lease on the basement apartment for as long as they wished to occupy such premises, and that the rent payment for this indefinite leasehold was the work Mr. Cielensky had performed in helping build the Freedline house, plus the expenditure of money in remodeling and rebuilding the basement apartment.

What, then, is the legal nature of the right which Cielensky claims to occupy the basement apartment rent free so long as he, Cielensky, desires to do so? He does not claim an in-

terest in the land; only a right to occupy a part of such land as long as he wishes.

Estates less than a freehold include estates for years, at will, and by sufferance. *Ralston Steel Car Co.* v. *Ralston*, 112 Ohio St., 306, at p. 315; 20 Ohio Jurisprudence (2d), Estates, Section 106 *et seq.*

The Supreme Court of Ohio, in *Say* v. *Stoddard*, 27 Ohio St., 478, said:

"1. Where, by the terms of a written lease, the tenancy is to continue so long as the parties shall mutually agree, and either party may determine it on four days' notice—the rent to be paid monthly or semimonthly, as may be most convenient —such renting creates a tenancy at will.

"2. The lessee, in such case, acquires no certain indefeasible interest in the premises, which he can sell and transfer to another.

"3. Such tenancy will be determined, by implication of law, upon the death either of the lessor or lessee; or by the desertion of the premises by the lessee; or by the sale and transfer of his possession to another."

See also: *Brown* v. *Fowler*, 65 Ohio St., 507, at p. 523.

The great weight of authority in this country is to the effect that, where the lessee is at liberty to terminate a tenancy at any time, the lessor may also bring the relationship to an end. No distinction is made between a lease at the will of the lessor and one at the will of the lessee. An estate at the will of one party is also at the will of the other party.

137 A. L. R., 366, subdivision III; 51 Corpus Juris Secundum, Landlord and Tenant, Section 167; 32 American Jurisprudence, Landlord and Tenant, Sections 66 and 67; *Conley* v. *Gaylock* (W. Va.), 108 S. E. (2d), 675; *Ferrigno* v. *O'Connell*, 315 Mass., 536, 53 N. E. (2d), 384; *Foley* v. *Gamester*, 271 Mass., 55, 170 N. E., 799; *Toussaint* v. *Stone*, 116 Vt., 425, 77 A. (2d), 824; *Sage* v. *Shaul*, 159 Neb., 543, 67 N. W. (2d), 921; and *Shorter* v. *Shelton*, 183 Va., 819, 33 S. E. (2d), 643.

We must determine, then, that the tenancy of Mr. and Mrs. Cielensky, being a tenancy at will, was lawfully terminated by act of the parties. No rights of free occupancy existed in Mr. and Mrs. Cielensky after Mrs. Freedline indicated that she wished thereafter to have rent for the use of her premises.

There then remains for discussion the questions relating to the remodeling costs of the basement apartment incurred by Mr. Cielensky.

There is no evidence indicating that the remodeling costs were anything other than voluntary on the part of Mr. Cielensky. There is no evidence that either Mr. or Mrs. Freedline required this remodeling to be done before the Cielenskys moved into the basement apartment. It was done in order to make the basement apartment more comfortable. There is no evidence but that such work as was done on the basement became an integral part of the premises, such as floors, interior wall construction, plumbing, and interior decoration. There is no evidence to indicate that Cielensky expected to be reimbursed other than by free rent.

A tenant is only obligated to repair or improve premises which result from an agreement to do so, or as the result of conduct that amounts to waste. He is not obligated to make a repair made necessary as the result of ordinary wear and tear. *Cincinnati Oakland Motor Co.* v. *Meyer,* 37 Ohio App., 90.

It would seem to follow that a tenant, in the absence of an agreement to do so, is not required to make substantial or lasting repairs and improvements to the leased premises.

The evidence before us indicates that the material placed in the basement became a part of the realty, and was in no way considered personal property which a tenant may remove at the termination of a lease. We think it is axiomatic that a tenant, in the absence of an agreement therefor, cannot remove those things which have become a part of the realty.

The next matter we consider is whether, under the theory of unjust enrichment, Mr. and Mrs. Cielensky have any claim against Mrs. Freedline and/or the estate of Anthony Freedline, deceased. The doctrine of ''unjust enrichment'' is that a person shall not be allowed to profit or enrich himself inequitably at another's expense. *McClanahan* v. *McClanahan,* 79 Ohio App., 231.

A court, in a proper case, may relieve a party from a bargain if an unconscionable advantage has been taken by reason of a weakness of mind or necessitous circumstances. Nothing

like that appears in this case. *Ullman* v. *May*, 147 Ohio St., 468.

The phrase "unjust enrichment" is frequently used in the common-law remedy of restitution, which remedy is sometimes relied upon to prevent a person from retaining property to which he is not justly entitled. *Keco Industries, Inc.*, v. *Cincinnati & Suburban Bell Telephone Co.*, 166 Ohio St., 254.

Restatement of the Law of Restitution, Pt. I, Chapter 1, Topic 1, Section 2, says: "A person who officiously confers a benefit upon another is not entitled to restitution therefor." Comment "a" under such section, *supra*, says:

"a. * * * Policy ordinarily requires that a person who has conferred a benefit either by way of giving another services or by adding to the value of his land or by paying his debt or even by transferring property to him should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a valid reason for so doing. A person is not required to deal with another unless he so desires and, ordinarily, a person should not be required to become an obligor unless he so desires.

"* * * *"

There was not, in the remodeling of the basement apartment, an agreement of any nature to pay Frank Cielensky for the labor and materials.

Under the doctrine of "unjust enrichment," the claim of "quasi contract" is advanced, which is, in fact, not a true contract, since it does not arise out of a consensual arrangement, but is an obligation imposed by law to promote justice and to prevent fraud or wrongdoing. *Hummel, Sr.*, v. *Hummel*, 133 Ohio St., 520.

In the instant case, Mr. and Mrs. Cielensky were loaned $3,500 by Mr. and Mrs. Freedline. With this money they purchased, and presumably still own, two parcels of land. Mr. and Mrs. Freedline received no tangible benefit for such a loan, and the Cielenskys gave no note or security for the loan.

Mr. Cielensky assisted Mr. Freedline in the building of his home with no intention to charge for these services. Mr. and Mrs. Cielensky also remodeled the basement of the Freedline home as a place for them to live. Nothing was said as to who should pay for it, or that the Freedlines would compensate

the Cielenskys for this work. The Cielenskys occupied this basement apartment for five years and seven months, rent free. They then paid three months' rent at $50 per month, and moved from the home.

Under such state of facts, can it be said that restitution should be made to the Cielenskys by Mrs. Freedline, under the theory of "unjust enrichment"?

We think not. We must determine herein that the trial court was in error when it, in effect, ordered Mrs. Freedline, and the estate of Anthony Freedline, deceased, to compensate Mr. and Mrs. Cielensky for the remodeling of the basement to the extent necessary to extinguish the debt Mr. and Mrs. Cielensky owed the Freedlines.

It is thus seen that, under our view of this case, the question of the application of the so-called dead man's statute, Section 2317.03, Revised Code, and the statute of frauds, Sections 1335.04 and 1335.05, Revised Code, need not be discussed, since, assuming all evidence to have been properly received, there can, under well-established rules of law, be no recovery by Mr. and Mrs. Cielensky herein.

We therefore modify the judgment as entered: (1) by affirming the judgment rendered in behalf of Philomena Freedline et al., against Frank Cielensky and Emma Cielensky; (2) by reversing the judgment awarded Frank Cielensky and Emma Cielensky against Philomena Freedline; and (3) by awarding final judgment in favor of Philomena Freedline and Philomena Freedline, executrix of the estate of Anthony Freedline, deceased, on the cross-petition and cross-demand as filed by Mr. and Mrs. Cielensky herein.

*Judgment accordingly.*

STEVENS, P. J., and DOYLE, J., concur.